IN THE UNITED STATES DISTRICT COURT
SOUTHERN DIVISION OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **JACOB GORSKY, and** )( | | |
| **OLESYA GORSKY,** )( | | |
| )( | | |
| Plaintiffs, )( | CIVIL ACTION NO.:4:16-cv-2877 | |
| )( | | |
| V. )( | JURY TRIAL | |
| )( | | |
| **HARRIS COUNTY, TEXAS,** )( | ORIGINAL COMPLAINT | |
| **HARRIS COUNTY PRECINCT 4,** )( | | |
| **CONSTABLE'S OFFICE,** )( | | |
| **DEPUTY GUAJARDO, INDIVID.,** )( | | |
| **DEPUTY SMALL, INDIVID.,** )( | | |
| **DEPUTY BERRY, INDIVID., and** )( | | |
| **DEPUTY RIVAUX, INDIVID.,** )( | | |
| )( | | |
| Defendants. )( | | |

## PLAINTIFFS' ORIGINAL COMPLAINT

**NOW COMES** Plaintiffs JACOB GORSKY and OLESYA GORSKY complaining of Harris County, Texas, Harris County Precinct 4, Deputy Guajardo, Individually, Deputy Small, Individually, Deputy Berry, Individually, and Defendant Rivaux, Individually, and will show the Court the following:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction over Plaintiff's federal claims, under 28 U.S.C. § 1331, 42 U.S.C. §§ 1983 and 1988, and supplemental jurisdiction, under 28 U.S.C. § 1367(a), to hear Plaintiff's state law claims, if any.

2.     Venue is proper in this Court, under 28 U.S.C. § 1391(b), because the incident at issue took place in Harris County, Texas, within the United States Southern District of Texas.

PLAINTIFFS' ORIGINAL COMPLAINT                                                                 Page 1

# PARTIES

3. Plaintiff Jacob Gorsky is a resident of Harris County, Texas.

4. Plaintiff Olesya Gorsky is a resident of Harris County, Texas.

5. Defendant Harris County, Texas is a governmental unit existing within the U.S. Southern District of Texas and can be served with process by serving the County Judge of Harris County, Texas at 1001 Preston, Houston, Texas 77012.

6. Defendant Harris County Precinct 4 Constable's Office is a governmental unit existing within the U.S. Southern District of Texas and can be served with process by serving the County Judge of Harris County, Texas at 1001 Preston, Houston, Texas 77012.

7. Defendant, Guajardo, ("Deputy Guajardo") Individually, at all time relevant was a Harris County Precinct 4 deputy constable who can be served with process at 6831 Cypresswood, Spring 77379, or in person wherever he is found.

8. Defendant, Small, ("Deputy Small") Individually, at all times relevant was a Harris County Precinct 4 deputy constable who can be served with process at 6831 Cypresswood, Spring 77379, or in person wherever he is found.

9. Defendant, Berry, ("Deputy Berry") Individually, at all times relevant was a Harris County Precinct 4 deputy constable who can be served with process at 6831 Cypresswood, Spring 77379, or in person wherever he is found.

10. Defendant, Rivaux, ("Deputy Rivaux") Individually, at all times relevant was a Harris County Precinct 4 deputy constable and can be served with process at 6831 Cypresswood, Spring 77379, or in person wherever he is found.

## FACTS

11. Jacob Gorsky ('Jacob") is 63 years old and has never been convicted of a crime in his life.

12. Olesya Gorsky ("Olesya") was 33 years old at the time of the events and never been convicted of a crime in her life.

13. Around 3:15 in the morning of Sunday, February 21 2016, Jacob and Olesya were asleep in their home, a house, at 118 N. Pinto Point Circle, Spring, Texas.

14. Four Precinct 4, Harris County Deputy constables came to the front door of Jacob and Olesya Gorsky's home, rang the doorbell repeatedly, and banged loudly on the front door.

15. The noise awoke Jacob and, dressed only in his underwear; Jacob came to the front door and opened it. The officers then ordered Jacob to summon his wife, Olesya Gorsky. The officers did not identify themselves. The officers did not say why they were present at the Gorsky's residence.

16. The officers possessed no warrant.

17. Jacob asked the officers to remain outside while he went to wake his wife who was still asleep.

18. At that moment, the officers jammed the door with their boots and entered the house without permission. The officers abruptly grabbed Jacob and handcuffed his hands behind his back without any explanation. Jacob did not resist, provoke or threaten the officers. The officers did not explain the reasons for these actions.

19. Despite telling the officers of pain in his back, one of the officers pushed Jacob's arms up behind his back is such a way as to extend and prolong the pain and dragged Jacob barefoot and in his underwear only over the front lawn to one of three squad cars on the scene.

20. Still unaware of the reason for his arrest, Jacob was locked in the cold police car, in his underwear and in non-stop pain due to the tight restraining position with handcuffed arms behind his back. 45 or so minutes later when taken out of the squad car, Jacob could not stand up straight and was bending forward due to the pain. Even then, after Jacob's repeated requests to explain his detention and to identify involved, only one identified himself as Deputy Guajardo who stated that Lieutenant Lowry ordered them to Jacob's residence.

21. During these events, the officers made derogatory remarks about him, his wife and their foreign origin, accent and Russian "habits".

22. While Jacob was dragged across the lawn handcuffed in front of his neighbors, the door of his house remained wide-open and loud voices and rude remarks of officers awakened Olesya who came to the front door. Just out of the bed from sleeping, Olesya was only partially dressed and not fully aware of her surroundings. Olesya had no previous knowledge of contacts with unidentified armed men claimed to be the police. Olesya has limited use of the English language which is readily apparent.

23. Without any explanation or giving Olesya an opportunity to get dressed or cover herself, the officers charged at Olesya entering the house a second time without permission.

24. The officers grabbed Olesya and touched in multiple locations causing bruises visible on her arms lags and buttocks in days. The officers rudely pushed and bent Olesya forward from behind while Olesya, who weighs about 120 lbs. and is the mother of a small child offered no resistance and presented no danger to the officers. Olesya was handcuffed and was loudly yelled at repeatedly with extremely offensive threats and gestures. Olesya could not understand most of what all "you did it" or "admit it" being loudly yelled at her, feeling more and more like the officers meant to treat her "like she is a wild animal".

25. Olesya wept and kept asking if she was arrested and if yes, why, but was repeatedly ignored.  Eventually all four officers entered the house a third time without permission and began searching throughout the house without Olesya knowing what officers were doing where.

26. Finally, the officers succeeded for Olesya to lose the last of her composure and she began to cry uncontrollably, which precipitated further ridicule by the officers. Presumably, in order to find some documents, the officers searched the entire home and the back yard, terrifying the Gorsky's sleeping 7-year old child in the bedroom with flashlights into his face, turning room lights on and making noise. Then, the officers ordered Olesya to find and produce Jacob's and her driver licenses.

27. Eventually the officers revealed the reason for the warrantless nighttime invasions was that the neighbors have a video that presumably showed Olesya had egged the neighbor's car, a low-level misdemeanor. Olesya had not egged any car and no matter how much intimidation and cruelty the officers had inflicted on her, she steadfastly rejected the allegations.

28. During this 45 minutes or so ordeal, the officers forced Olesya to sign some papers, even though Olesya, through tears, repeatedly told the officers she did not fully understand what the papers stated or why she had to sign. The officers kept the Gorskys separate so Jacob could not review the papers or explain to Olesya what she was signing and why. Officers left with Olesya not a single copy of any signed document.  Other than an unsigned copy of a citation.

29. The following day, the Gorskys retained an attorney to find out the police version of events, to locate and secure the documentary evidence, case reports, supplementary notes, and audio and video recording, if any, allegedly collected against Olesya for the alleged car egging. However, Harris Country Constable Precinct 4 elected to deny the attorney all requested records referring him to the office of the assistant district attorney..

30. Meanwhile, the ordeal had an immediate effect on the Gorskys who suffered immensely, not the least for being embarrassed in front of their entire neighborhood. Olesya was in constant fear, lost sleep and for days felt so ashamed that even refused for anybody to touch her feeling utterly violated.

31. With no progress in the case and legal expenses reaching in to thousands, Jacob was advised to contact the Precinct 4 Internal Affairs Division whereupon February 29, 2016 he filed a formal complaint against the officers involved with the Internal Affairs Division representative, Corporal Black.

32. In two weeks' time, while checking on the case and possible evidence at the office of the assistant district attorney, the Gorsky's defense council was told the case was dismissed on March 11 2016.

33. The Gorskys were going through a heavy burden of humiliation accompanied by rising stress, anxiety and depression that required medical attention and prescription medications. The ever-growing loss of enjoyment of life and indignity instigated upon Olesya by the officers' actions have also caused an embracing loss of consortium.

34. Jacob kept inquiring persistently about his complaint with the Precinct 4 Internal Affairs Division, until mid-August 2016, when Jacob received a letter from Michael Combest, Assistant Precinct 4 Patrol Administration, stating the complaint was closed with a disposition "unfounded" and no further action to be taken.

35. David Scherz, Jr., 26, lived his Yvonne Scherz, father David Scherz, Sr., sister Elizabeth Scherz, aunt Irma Montes, a niece and grandmother in the Ponderosa Forest subdivision.

36. On September 10, 2011, at around 6:30 PM David Jr. was driving home in north Houston, Harris County, when he was stopped by Harris County Precinct 4 deputy constable B.

Lewis claiming he stopped David for running the stop sign that is near David's residence. It was very hot and sunny at the time (98 degrees) and Houston had been in a heat wave and drought for many weeks. David, however, did stop at the stop sign and Deputy Lewis possessed no information that David had committed any traffic violation or any other law violation and in fact David had not committed any law violations including traffic violations. Deputy Lewis' squad car video of the incident shows that Deputy Lewis did not view David running a stop sign or other traffic or criminal law violation.

37. Elizabeth was also at home sitting in her father's, plaintiff David Scherz's, office that overlooks the home's driveway where David and Deputy Lewis were. Through the window Elizabeth had seen Deputy Lewis parking in front of the house and walking to her brother's, David Scherz Jr., vehicle.

38. Elizabeth then told her mother Yvonne that there was an officer outside the house with David Jr. and then walked back into the office. Elizabeth then observed Yvonne walk outside. Once outside Yvonne asked Deputy Lewis, in a respectful non-threatening tone, what Deputy Lewis was doing on her property. Deputy Lewis then told Yvonne that she has to go into her house or be put into Deputy Lewis' squad car. Yvonne retreated a safe distance away toward the front porch, but continued to observe the Deputy Lewis in his duties on her property.

39. In a few moments Elizabeth observed Deputy Lewis charge quickly towards Yvonne after Elizabeth heard Yvonne say that she had a right to stand on her own property and that Deputy Lewis was on her property. Deputy Lewis was extremely angry at Yvonne for not getting back in the house as he had illegally ordered.

40. At the time Yvonne was not moving toward the officer or shouting but acting in a completely legal, respectful manner which was captured on audiotape. Deputy Lewis knew this

was an illegal order and knew at the time people cannot be legally detained or arrested for the activities that Yvonne was engaged in.

41. Deputy Lewis then illegally and violently seized and arrested Yvonne Scherz by dragging her and putting her on the ground. Yvonne experienced at least great pain and bruising, nerve damage to her hands, knee abrasions and her arm was swollen and bruised. Deputy Lewis arrested and charged Yvonne for the crime of "interference with public duties" knowing at the time there was no probable cause for the arrest nor was there probable cause for any arrest. Deputy Lewis eventually caused to be filled-out court paperwork that continued the false prosecution of Yvonne.

42. Deputy Lewis searched Yvonne Scherz's vehicle which was on her property without her or anyone's permission.

43. Yvonne was forced to show up at the Harris County Criminal Court No. Four (4) on at least eight occasions until the false charges were dismissed in her favor.

44. Yvonne made a complaint to the Precinct 4 Internal Affairs Department including the video evidence, however, there was no discipline of any kind.

45. During the incident Deputy Lewis called for back up and at least ten Harris County Precinct 4 deputy constables arrived on the scene. No other law enforcement officers were present other than from Harris County Precinct 4.

46. Three deputies including Deputy Dahlin grabbed David Jr. and punched him and Deputy Dahlin maced David Jr. and put him onto the hot Houston summer pavement when they easily could have put him on the grass lawn. At the time David was not resisting in anyway. Deputy Dahlin than began striking David Jr. in the head with his fist causing swelling and great pain while pushing David Jr.'s head and face into the hot pavement causing additional pain. Officer

Dahlin pushed and held David's Jr's face onto the hot concrete knowing if to be hot enough to cause great pain which in fact did cause great pain.

47. While David Jr. was on the hot pavement held by Deputy Dahlin and another constable deputy, Sgt. Drummond, began violently kicking David Jr. in the side as he lay on the pavement causing excruciating pain and internal injuries. Deputy Dahlin and the other deputy saw this occurring and made no effort to stop the violent assault by Sgt. Drummond.

48. Minutes later while David Jr. was lying handcuffed on the pavement Sgt. Drummond dropped his whole 400 pounds with his knee upon David's neck causing excruciating pain and then pulled David's head back by the nose and began punching David in the head and again pushed his face in contact with the hot Houston concrete causing excruciating pain while knowing the pavement was hot enough to cause severe pain. Sgt. Drummond then wiped his shoe on David's back.

49. As a result of his severe beating David suffered at least a fractured rib and extensive bruising and abrasions. David was charged with criminal mischief class A due to an unintentional dent in the hood of Deputy Lewis' squad car. His criminal defense was dismissed in May 4, 2013.

50. Precinct 4 Constable Ron Hickman is the policymaker for Harris County in regards to officer hiring, firing, training and discipline. Ron Hickman was fully aware of the facts as recited herein yet took no action against any deputy.

51. No Precinct 4 constable deputy was reported, arrested, or complained about by any other Precinct 4 deputy for excessive force, unlawful detention, or wrongful arrest despite the above facts and video evidence being in Harris County Precinct 4 possession.

52. David made a complaint to the Precinct 4 Internal Affairs Department including the video evidence, however, there was no discipline of any kind.

53. At the time of the initial traffic stop on David Jr. by Officer Lewis, Irma was helping David Sr. clean out the garage when Irma's daughter came running and said Aunt Yvonne was in trouble with Officer Lewis. Irma is 5 foot, 2 inches tall.

54. David Sr. and Irma ran outside from the garage to the front yard of the house. Irma's sister Yvonne was lying on the ground and her face was smashed down and Officer Lewis was yanking on her arms.

55. Irma asked why Officer Lewis was arresting her and Yvonne was clearly being injured and in pain caused by Officer Lewis. Irma told Officer Lewis he was using excessive force. Lewis then handcuffed Yvonne and dragged her on the rough driveway to his patrol car parked on the street and put her in his patrol car.

56. Several other Precinct 4 deputy constable squad cars then arrived. Two deputies rushed towards Irma and Irma yelled for the deputies to stop. Irma felt her life was threatened and they were going to pull out guns and shoot the family. Harris County Precinct 4 deputy constable Schmidt grabbed Irma by her neck and arm and at some point threw Irma with terrific force to the scorching pavement. The force used was in great excess to the need to use such force.

57. The force broke Irma's hand and her glasses broke. Irma's arm was severely bruised from Officer Schmidt grabbing Irma.

58. Irma could see Toby, the Scherz's small white dog, had gotten of the house onto the street where it could be run over. Irma asked Officer Schmidt to put the dog in the house. Officer Schmidt yelled at Irma to "shut up" and called Irma a stupid Spanish or Hispanic bitch. Officer Schmidt was extremely angry although he had sustained no injury.

59. Irma's hand was in excruciating pain and then after Officer Schmidt put the handcuffs on it was even more painful. Irma clearly asked for the handcuffs to be loosened and

Office Schmidt refused.  Irma told another Harris County Precinct 4 deputy constable that the cuffs were too tight and he told Irma to "shut the fuck up."

60.     A female Harris County Precinct 4 deputy constable put Irma in the back of a patrol car and turned off the air conditioner.  All the squad car windows were closed.  It was around 98 degrees outside and grew much hotter in the vehicle.  It was very hard to breathe in the patrol car and Irma experienced great discomfort and became woozy.  This lasted from 30 minutes to an hour before the squad car was driven first to the Precinct 4 jail and then to the Harris County jail.

61.     Irma was charged with interference with public duties by Officer Schmidt and other Harris County Precinct 4 deputy constables in Harris County Criminal Court at Law No. 4.  Irma was taken first to Precinct 4 jail then to the Harris County jail and was bonded out the next day.  The case was dismissed in Irma's favor May 4, 2012.

62.     Irma made a complaint to the Precinct 4 Internal Affairs Department including the video evidence, however, there was no discipline of any kind.

63.     During the incident Elizabeth was recording the events on a cell phone by video, audio and photographs because the deputies were injuring David Sr., Yvonne, Irma and David Jr.  At all times Elizabeth was acting in a lawful manner, on her own property, did not assault anyone, did not interfere with any officer nor was there any probable cause Elizabeth had committed a crime nor was she a danger to anyone.

64.     Because Elizabeth was legally recording the excessive force and wrongful arrests Deputy Combs, Deputy Schmidt and a passerby attacked her and Deputy Schmidt her causing pain and abrasions/bruising to at least the chin and knee. Because of the attack by Deputy Combs and Deputy Schmidt Elizabeth was forcibly stopped from recording by video, audio and photographs the events that were unfolding.  There was no search warrant, nor arrest warrant, regarding the

entire incident described herein.

65. Deputy Schmidt then took the cell phone recording device without a search warrant or permission.

66. Officer Schmidt and/or the passerby threw Elizabeth into the patrol car and left her to sit there without air conditioning even though Elizabeth asked Precinct 4 deputies to put the Air Conditioning on. The Air Conditioning was not on and the doors were closed. The temperature that day was 98 degrees and it grew much hotter in the squad car. It was so hot Elizabeth found it hard to breathe and felt she was going to die. The deputies kept Elizabeth sitting in the car for between 30 minutes to an hour without opening any of the doors.

67. Elizabeth was arrested for felony assault on a public servant because deputy Combs tripped as he was attacking Elizabeth for legally taping the deputies' excessive use of force and false arrest. Elizabeth was taken to the Harris County Precinct 4 jail and then to the Harris County jail and was bonded out the next day.

68. Elizabeth was forced to show up at the 262nd District Court of Harris County, Texas on at least six occasions until the false charges brought by the accusations of Deputy Combs and Deputy Schmidt were dismissed in her favor February 1, 2012. The Harris County Assistant District indicated on the dismissal form there was no probable cause for the arrest and there was none.

69. Elizabeth made a complaint to the Precinct 4 Internal Affairs Department including the video evidence, however, there was no discipline of any kind. Elizabeth's right knee, arms and chin were bruised and she limped for a week and had at least two more weeks of knee pain.

70. During the incident David Sr. was arrested and placed on the hot concrete causing great pain. While David Sr. was lying on the hot concrete in handcuffs Sgt. Drummond put his

foot on David Sr.'s face and ground David Sr.'s face into the hot concrete causing extreme pain, bruising and abrasions. At the time David Sr. was acting in a lawful manner and was not a danger to anyone. David Sr. suffered nerve damage leaving the inside and the hand and thumb without feeling. The condition lasted for about four months before healing.

71. David Sr. was placed into an unairconditioned squad car and the temperature rapidly rose above the 98 degree outside temperature. The heat caused David Sr. to experience nausea and a very rapid heart rate and David Sr. thought that a heart attack might be imminent. David Sr., asked a Precinct 4 deputy to turn on the air conditioner, however, the deputy refused.

72. During the incident David Sr. had his cell phone taken by Officer Schmidt because Elizabeth was recording the police activity occurring.

73. David made a complaint to the Precinct 4 Internal Affairs Department including the video evidence, however, there was no discipline of any kind.

74. Jimmie Drummond has had many previous citizen complaints involving excessive force that was well known throughout Harris County Precinct 4 including Chief Sumner, Captain P.G. Wall, Constable Ron Hickman, Corporal Black, Investigator Smith since at least 2009. See **Exhibit 1.**

75. Additionally, the Harris County Precinct 4 IAD department would not take complaints from, and would discourage citizens from, filing IAD complaints on Jimmy Drummond and other deputies.

## CAUSES OF ACTION

### Violations of the Fourth and Fourteenth Amendments

76. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

77. The Fourth Amendment guarantees everyone the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *U.S. Const. amend. IV.* Fourth Amendment violation are actionable under 42 U.S.C. Section 1983.

78. Defendants Deputies violated the Gorsky's Fourth Amendment and Fourteenth Amendments rights, at least, when they detained and arrested them, entered their residence several times without warrant or permission, searched them and their residence and belongings without probable cause or reasonable suspicion, used excessive force against them and prosecuted them.

79. The Fourteenth Amendment guarantees everyone the right not to be deprived of liberty without due process of law. *U.S. Const. amend. XIV.*

80. Defendants violated the Gorsky's Fourteenth Amendment rights when they detained and arrested them, him without probable cause or reasonable suspicion, entered their residence several times without warrant or permission, searched them and their residence and belongings without probable cause or reasonable suspicion and used excessive force against them causing them injuries including mental anguish.

## SUPERVISORY LIABILITY

81. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

82. Deputy Rivaux was the scene supervisor. Deputy Rivaux was aware of what was happening to the Gorskys and had a duty to supervise but failed to intervene and prevent the unreasonable searches and seizures, warrantless entries into the Gorsky's home and excessive force as described above.

83. Deputy Rivaux is sued individually under well-established theories of supervisory and participatory liability under 42 USC Section 1983 for excessive force, unlawful detention, and

illegal search and seizure.  *Roberts v. City of Shreveport*, 397 F.3d 287, 291 (5th Cir. 2005).

## POLICY, PRACTICE, CUSTOM AND PROCEDURE/RATIFICATION

84. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

85. Mr. Gorsky complained of his treatment to Harris County Precinct 4 and no officer received any discipline, training, or any other consequence as a result of the illegal searches and seizure and excessive force.  The irrefutable evidence clearly showed the Deputies violated the Constitutional rights of the Gorskys. As such Harris County, Texas ratified the deputies' actions as their own policies, practices, customs and procedures. Despite the evidence against the deputies regarding the incident there has been no retraining, discipline or consequence to any of the involved deputies indicating a custom, policy, practice and procedure by Harris County, Texas of allowing all the aforementioned bad acts.  *Grandstaff v. City of Borger,* 767 F.2d 161 (5th Cir. 1985), *cert. denied,* 480 U.S. 916 (1987). Further ratification occurred by reference to the previous inactions of Jimmy Drummond's excessive force complaints and others.

86. Furthermore, Harris County and Precinct 4 have a policy, practice, custom and procedure, of using excessive force, unlawful detentions and arrests, warrantless searches, failure to train, supervise and discipline, failure to accept IAD complaints and ratification of the Constitutional violations as indicated herein.

## PUNITIVE DAMAGES

87. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

88. All individuals sued are liable for punitive damages as they were consciously indifferent to the plaintiff's constitutional rights and they did the acts knowingly, such acts being

extreme and outrageous and shocking to the conscious.

## ATTORNEY'S FEES

89. The Gorskys are entitled to recover attorneys' fees and costs to enforce his Constitutional rights and under 42 U.S.C. Sections 1983 and 1988, from Defendants.

## JURY TRIAL

90. The Gorskys demand trial by jury on all issues triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jacob and OLESYA Gorsky request that the Court:

A.  Enter judgment for Plaintiffs against Harris County, Texas, Precinct 4, Harris County, Texas and each and every individually name defendant jointly and severally;

B.  Find that Plaintiffs are the prevailing parties in this case and award attorneys' fees and costs, pursuant to federal law, as noted against defendant Harris County, Texas and Precinct 4, Harris County, Texas and the individually named defendant police officers and jailers jointly and severally;

C.  Award damages to Plaintiffs for the violations of their Constitutional rights claim;

D.  Award Pre- and post-judgement interest;

E.  Award Punitive damages against all individually named defendants; and

F.  Grant such other and further relief as appears reasonable and just, to which, Plaintiffs shows themselves entitled.

                RESPECTFULLY SUBMITTED
                LAW OFFICE OF RANDALL L KALLINEN PLLC

/S/ Randall L. Kallinen
Randall L. Kallinen
State Bar of Texas No. 00790995
U.S. Southern District of Texas Bar No.: 19417
511 Broadway Street
Houston, Texas 77012
Telephone:     713.320.3785
FAX:             713.893.6737
E-mail:AttorneyKallinen@aol.com
Attorney for Plaintiff